**Arthur MASON, Appellant**

v.

**UNITED STATES PAROLE COMMISSION,**
**Appellee.**

**No. 00–SP–150.**

District of Columbia Court of Appeals.

Submitted Feb. 27, 2001.
Decided March 15, 2001.

Richard T. Moore, Washington, DC, appointed by the court, filed a brief for appellant.

Wilma A. Lewis, United States Attorney, and Suzanne Grealy Curt, John R. Fisher, Roy W. McLeese, III and Robert D. Okun, Assistant United States Attorneys, filed a brief for appellee.

Before STEADMAN, SCHWELB and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Arthur Mason began serving consecutive sentences of three to nine years for kidnapping, *see* D.C.Code § 22–2101 (1996 Repl.), and thirty to ninety days for theft, *see* D.C.Code § 22–3812(b) (1996 Repl.), on July 1, 1996. When he first became eligible for parole, the United States Parole Commission denied his request for release and set a rehearing date for January, 2004, five years after his initial eligibility, and far in excess of the eighteen to twenty-four month interval between hearings recommended by the Commission's guidelines. *See* 28 C.F.R. § 2.80(j) (1999).[1] The Commission justified its departure with a recitation of the violent circumstances surrounding Mason's crimes. Alleging that the Commission may not base its decision to depart from the guidelines on factors explicitly considered within them, Mason filed a petition for a writ of habeas corpus with the Superior Court, which was denied. Finding no error, we affirm.

## I. Facts

According to the police report, Mason and two accomplices stopped and demanded the wallet of a man walking to the Eastern Market Metro Station. Finding no money in his wallet, they took his bank card, forced him into a pick-up truck, placed a blanket over his head, and drove him to an ATM machine. Unsuccessful at withdrawing money, they drove him to another ATM, and, failing again, demanded his house keys and entered his home to steal his stereo and telephone equipment. In a final attempt to access his bank account, they brought him to an alley, where they punched and strangled him to force him to reveal the personal identification number for his bank card. After the beating, they took him to a sporting goods store. The store manager ended the or-

deal by summoning police, who arrested Mason and the two others.

Mason pleaded guilty to kidnapping and theft. At his parole hearing, he did not object to this description of the crime, although he did note that he was not the driver of the pickup truck, as his co-defendants had alleged.

## II. Analysis

█ For a writ of habeas corpus to issue, the prisoner must present "an allegation and supporting facts which, if borne out by proof, would entitle him ... to relief." *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C.1993). Here, Mason alleges that the Parole Commission "double counted" violence by using it to justify a departure from the guidelines despite the fact that it had already explicitly been taken into account within the guidelines themselves. If proven, double counting would entitle Mason to relief. This court has held that the parole authority abuses its discretion when it "relies upon an aggravating factor to generate a presumptive parole date for a prisoner ... and then applies the same factor in determining whether to extend the date beyond the presumptive date set out under the guidelines." *Hall v. Henderson*, 672 A.2d 1047, 1055 (D.C. 1996).

█ Mason does not meet his burden, however, merely by showing that "violence," in the abstract, was considered twice. He must show that the specific episodes of violence used to justify a departure were also taken into account within the guidelines. *See id.* at 1056 (holding that a pattern of violence beginning with the inmate's youth may form a valid basis for departure if not taken into account within the guidelines); *see also Romano v. Baer*, 805 F.2d 268, 271 (7th Cir.1986) ("[T]o determine whether double-counting has occurred, the crucial comparison is

1. The guidelines for D.C.Code offenders, published at 28 C.F.R. § 2.80, were substantially revised after Mason's parole hearing. All ci-
tations to the C.F.R. herein are to the version of the guidelines applicable to Mason, which became effective on February 4, 1999.

between the factors used to place a defendant in a severity category and the factors used to continue a prisoner beyond the guidelines."). Mason has failed to do so here. The Parole Commission based its departure on the beating and strangulation of the victim as well as the robbery of his home:

> After kidnapping the victim, he was taken to his home and robbed, then taken to an alley and beaten and strangled to force him to provide his pin number and then driven to a store to obtain items.

For the reasons shown below, none of these actions was taken into consideration within the framework of the guidelines.

A rehearing date under the guidelines is determined by the inmate's numerical "base point score." *See* 28 C.F.R. § 2.80(j)(2) (1999). The base point score consists, *inter alia,* of a component designed to reflect the offender's history of violence (designated as "Category II"), and a component that reflects the violence of the charged offense (designated as "Category III"). *See* 28 C.F.R. § 2.80(f) (1999). The Category II score depends entirely upon the number of offenses in which violence was a factor, without accounting for the degree of violence present in any particular incident. *See id.* It does not, by definition, reflect any of the qualitative, offense-specific factors cited by the Commission to justify departure.[2]

The Category III score, ostensibly established to reflect the intensity of violence in the current offense, is determined by only three factors: whether the violence resulted in death, whether the violence was very likely to end in death, and whether the inmate was convicted for one of a number of enumerated "high violence" offenses. *See id.* Appellant's beating and strangulation of the kidnapped victim do not fit within any of these. The victim was not in fact strangled to death, and indeed the strangulation was unlikely to end in death *at that time* because the assailants wanted the victim alive to reveal his personal identification number. Kidnapping is designated by the Commission as a "high violence" offense,[3] *see* 28 C.F.R. § 2.80(g)(2)(v) (1999), but that designation alone does not necessarily take into account the unique circumstances of this crime. Although every crime has its own particular facts, mere recitation of these facts does not suffice to justify additional points for violence. The *unusual* pattern of violence that concerned the Commission in this case was related to the kidnapping but not subsumed by it. The elements of kidnapping had been satisfied long before the beating: the victim had already been overpowered, sequestered, and taken to various locations, including his own home, in search of money. The beating and strangulation evince a wantonness beyond that required to complete the kidnapping, and a willingness to engage in even more violent acts. In *Hall,* this court held that the parole authority may depart from the guidelines when observing a pattern of "unusual cruelty" demonstrated in part by

---

**2.** Mason's score of three reflects the presence of violence in the current offense and his conviction of engaging in indecent acts with a child under D.C.Code § 22–3501 (repealed by the Anti Sexual Abuse Act of 1994, D.C. Law 10–257, § 501(b), 42 D.C.R. 53). Parole Commission guidelines indicate that "[a]ny offense involving sexual abuse of a person less than sixteen years of age," is classified as a crime of high violence. *See* 28 C.F.R. § 2.80(g)(2)(viii).

**3.** The Commission appears to have inadvertently assigned Mason a score of zero in Cate-

gory III, despite the fact that, under the guidelines, kidnapping is considered to be a crime of high violence that would have merited a score of one, *see* 28 C.F.R. § 2.80(g)(2)(v) (1999), and Mason's initial prehearing assessment reflected that score. This error has no effect on this case, however, because a base point score of seven, the correct score, results in the same presumptive rehearing dates as a score of six, the incorrect score used by the Parole Commission. *See* 28 C.F.R. § 2.80(f) (1999).

actions taken into account within the guidelines, and in part by other actions that were not. *See* 672 A.2d at 1056. The holding of *Hall* governs this appeal as well, and we find no abuse of discretion by the Parole Commission in setting Mason's rehearing date.

Accordingly, for all of the foregoing reasons, the judgment is

*Affirmed.*